**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominador Oropilla,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-20-01528-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Dominador Oropilla's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 19, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 20, "Def. Br.") and Plaintiff filed a Reply (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 16, "R.") and now reverses and remands for a new disability determination.

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on September 29, 2016, for a period of disability beginning on March 25, 2014. (R. at 15.) His claim was initially denied on February 28, 2017, and again upon reconsideration on May 25, 2017. (R. at 15.) Plaintiff appeared before the ALJ for a hearing regarding his claim on February 20, 2019, which the ALJ denied on April 5, 2019. (R. at 15, 24–25.) Plaintiff

appealed and, on June 10, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–5.)

The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's own testimony, and the testimony of a vocational expert. (R. 17–24.) Upon considering the medical records and opinions, the ALJ evaluated the Plaintiff's disability based on the following severe impairments: degenerative disc disease, lumbar spondylosis, and post-traumatic stress disorder.[1] (R. at 17.)

At step three of the five-step sequential analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 18.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [T]hrough the date last insured, [Plaintiff] had the [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(c) except with the following additional limitations: [Plaintiff] can lift and/or carry no more than 15 pounds. He could occasionally stoop, kneel, crouch, and crawl. He would be limited to occupations involving only simple work related decisions and relatively few work place changes and superficial and occasional interaction with others.

(R. at 19.) Based on Plaintiff's RFC, the ALJ found, at step four, that "[t]hrough the date last insured, [Plaintiff] was capable of performing past relevant work as a laundry worker II or a warehouse worker." (R. at 23.) The ALJ therefore concluded Plaintiff was not disabled from the alleged disability onset date through the date last insured. (R. at 24.)

## II.     LEGAL STANDARD

On appeal from an ALJ's decision, a district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir.

---

[1] The Court declines to address the agency's conclusions regarding Plaintiff's mental impairments because, as Plaintiff concedes, the instant "appeal is not focused on [his] mental impairments" (Pl. Br. at 16), and issues relating to such impairments have not been fully and adequately briefed.

2001). The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The reviewing court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

To determine whether a claimant is disabled, an ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. If so, the ALJ continues to step three. There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not,

the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id.*

## III.  DISCUSSION

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues that the ALJ erred in assigning limited weight to the medical opinion of Plaintiff's treating physician, Dr. Ajay Narwani, and great weight to the opinions of state agency non-examining physicians. (Pl. Br. at 10–13, 19.) Second, Plaintiff contends that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 13–20.) The Court will address each argument in turn.

### A.  Medical Opinions

Plaintiff argues the ALJ erred in assigning limited weight to the opinion of Dr. Narwani and great weight to the opinions of state agency non-examining physicians. (Pl. Br. at 10–13, 19.) In response, Defendant argues the ALJ properly provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Narwani's opinion and crediting the opinions of the state agency physicians. (Def. Br. at 14–17.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who have examined but not treated the claimant are examining physicians, and those who have neither examined nor treated the claimant are nonexamining physicians.[2] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."

---

[2] In March 2017, the SSA amended its regulations to, among other things, abrogate the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852–57 (Jan. 18, 2017); *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-08317, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020). The new regulations, however, apply only to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The regulations are therefore inapplicable to Plaintiff's claim, which was filed in 2016.

*Id.* This is so because a treating physician is "employed to cure and has a greater opportunity to know and observe the patient as an individual" than do other physicians. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). For this reason, an ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

In this case, Dr. Ajay Narwani, Plaintiff's treating physician, opined that Plaintiff: (1) could not lift, carry, or pull over 15 pounds on a repetitive basis; (2) should avoid repetitive stooping or bending, twisting, turning, and awkward positioning; (3) should avoid overhead lifting or reaching with both upper extremities; and (4) needed frequent breaks every hour. (R. at 400.) The vocational expert testified that the limitations expressed in Dr. Narwani's assessment were incongruent with the ability to sustain work. (R. at 57.)

The ALJ assigned only "minimal weight" to Dr. Narwani's opinion. (R. at 23.) In so doing, the ALJ stated only that the opinion was "not consistent with the record as a whole and the claimant's level of functioning." (R. at 23.) That statement constituted the entirety of the ALJ's discussion of Dr. Narwani's opinion. No citations to specific portions of the record were provided, and no specific reasons for rejecting Dr. Narwani's opinion were given. Absent such citations and discussion, there is simply no way for the

Court to assess the legitimacy of the ALJ's conclusions. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[E]ven if the ALJ had given facially legitimate reasons for his . . . finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy."); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) ("Far from 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings,' the ALJ pointed to nothing in Dr. Galhotra's treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion." (quoting *Magallanes*, 881 F.2d at 751)). While remand is likely warranted on this basis alone, the Court will nevertheless address the Commissioner's arguments regarding the medical opinion testimony.

The Commissioner argues that because the ALJ "summarized the medical records in detail in the preceding pages, and fairly incorporated that summary into her conclusion that Dr. Narwani's opinion . . . was not consistent with that evidence," she satisfied the requirement that "specific and legitimate reasons," supported by substantial evidence, be given in order to reject a treating physician's medical opinion. (Def. Br. at 15–16.) Not so. The ALJ's citations to the record were given as reasons for rejecting Plaintiff's symptom testimony, not as a basis for rejecting Dr. Narwani's medical opinion. *See Trevizo*, 871 F.3d at 677 ("Though the ALJ identified the absence of more aggressive interventions for Trevizo's back pain . . . as a reason for considering the pain to be 'non-severe,' she did not rely on it as a basis for rejecting Dr. Galhotra's opinion."); *see also Garrison*, 759 F.3d at 1010 (a reviewing court "may not affirm the ALJ on a ground upon which he [or she] did not rely.").

Even if, as the Commissioner suggests, the ALJ had engaged in a thorough discussion of Plaintiff's medical records when analyzing his symptom testimony, she failed to articulate with any particularity how those medical records are inconsistent with Dr. Narwani's opinion. *See Maske v. Comm'r of Soc. Sec. Admin.*, No. 18-cv-04891-PHX-DWL, 2020 WL 813768, at *5 (D. Ariz. Feb. 19, 2020) (finding error where "the ALJ failed to build a logical bridge between the evidence and her conclusion"). And, in any

event, the reasons relied on by the Commissioner are unpersuasive, even if they had been given to justify discrediting Dr. Narwani's opinion. The Commissioner relies on four reasons in particular: (1) Plaintiff was able to travel to the Philippines twice during the period of alleged disability (R. at 21); (2) Plaintiff received effective, non-surgical treatment for his neck and back pain (R. at 21–22); (3) Plaintiff's physical examinations showed normal strength, stability, and range of motion (R. at 22); and (4) Plaintiff's imaging showed only moderate findings inconsistent with disabling pain. (R. at 22.)

Evidence that Plaintiff traveled to the Philippines on two occasions, without more, is insufficient to negate Dr. Narwani's opinion, which is presumptively entitled to substantial weight. *See Tackett*, 180 F.3d at 1103. The ALJ cited no record evidence suggesting Plaintiff engaged in activities in the Philippines that were inconsistent with the impairments or limitations Dr. Narwani assessed. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014). Thus, although Plaintiff may have traveled to the Philippines *despite* his pain in order to handle family emergencies, that does not mean he "could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain . . . activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."). Indeed, Plaintiff testified that he eventually delegated his family duties in the Philippines to his brother because he was unable to continue traveling due to his condition. (R. 51–52.) Absent specific details about Plaintiff's activities in the Philippines, his travel there cannot constitute a legitimate reason for rejecting Dr. Narwani's considered opinion.

The ALJ's conclusion that Plaintiff's back treatment was "conservative and minimal" (R. at 21) is inconsistent with the record. Plaintiff's treatment involved, among other things, physical therapy, nerve burning procedures (ablation), narcotic pain medications, and lumbar medial nerve block injections. Such procedures can hardly be classified as either "minimal" or "conservative." *See, e.g.*, *Garrison*, 759 F.3d at 1015

n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify a 'conservative' medical treatment."); *see also Trevizo*, 871 F.3d at 677 ("[T]he failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability."). While the ALJ observed that Plaintiff's "pain gets better by taking medications," that Plaintiff "had excellent improvement after lumbar medial branch blocks," and that Plaintiff's "pain had been reduced by 65% by lumbar radiofrequency ablation," she omitted crucial context regarding those treatment notes. First, while the record does reflect that Plaintiff experienced significant relief after his nerve block injections, the ALJ failed to consider that such relief lasted only for a very short period: in one case, eight hours; in another, twelve hours. (R. at 364, 497–500, 515–16, 511–14.) Second, although Plaintiff did indicate on several occasions that his pain was improving due to his medication and physical therapy (*see, e.g.*, R. at 311, 317, 322, 324, 326, 328, 333, 337, 384, 375–77, 491, 511–13), he consistently informed Dr. Narwani and his other medical sources that his pain remained severe (R. at 304–39, 356, 358, 379–80, 381–82, 390–92, 396–97, 404–05, 407–08, 410–11, 412–13, 418–19, 544–66, 593–603). On several occasions, including when Plaintiff received lumbar radiofrequency ablation, Plaintiff's condition regressed after only a temporary improvement. (*See, e.g.*, R. at 489–91, 619–34.) Those few instances do not constitute a legitimate reason, supported by substantial evidence, for rejecting Dr. Narwani's medical opinion. *See Attmore v. Colvin*, 827 F.3d 872, 877 ("An ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms.'" (quoting *Garrison*, 759 F.3d at 1017)).

Further, even if Plaintiff's treatment had been effective, the ALJ failed to explain how that efficacy undermined, or was inconsistent with, Dr. Narwani's opinion regarding Plaintiff's RFC. It is entirely feasible that Plaintiff's pain, though less severe than before, still prevented him from "lift[ing], carry[ing], or pull[ing] over 15 pounds on

a repetitive basis," from repeatedly "stooping or bending, twisting, [or] turning," and from "lifting or reaching [overhead] with both upper extremities." (R. at 400.) *See Garrison*, 759 F.3d at 1017 n.23 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce" (quoting *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011)). Absent any such explanation, the Court is unable to conclude that the ALJ's decision was based on substantial evidence.

The Commissioner's reliance on the ALJ's statement that a single exam showed "normal range of motion, muscle strength, and stability in all extremities" (R. at 22) is similarly misplaced. The record is replete with evidence that Plaintiff's range of motion and strength were substantially impaired. (*See, e.g.*, R. at 298–300, 306, 347, 348, 364, 394, 564.) It was therefore unreasonable for the ALJ to "cherry-pick" a single treatment note that reached the opposite conclusion in order to support a denial of benefits. *See Attmore*, 827 F.3d at 877 (citing *Scott*, 647 F.3d at 740).

Finally, the ALJ's conclusion that Plaintiff's diagnostic imaging "indicated [his] impairments are not as severe as alleged," and showed "largely moderate findings" inconsistent with disabling pain, was not a legitimate reason for rejecting Dr. Narwani's opinion. (R. at 22.) Record evidence indicates Plaintiff's lumbar spine MRI revealed a moderate disc bulge with disc dehydration at L4-5 with mild to moderate facet hypertrophy and bilateral neural foraminal stenosis, and an L5-S1 diffuse annular bulge with a broad-based disc protrusion that encroached into the neural foramina. (R. at 425.) The MRI also revealed moderate to severe right-sided stenosis, moderate left-sided stenosis, and moderate bilateral facet hypertrophy. (R. at 425.) The ALJ determined that these findings were inconsistent with Plaintiff's symptom testimony but, as with the reasons discussed above, did not expressly rely on them in rejecting the opinion of Plaintiff's treating physician. (R. at 22, 24.) The Commissioner now argues, however, that the ALJ implicitly relied on Plaintiff's diagnostic imaging in rejecting Dr. Narwani's opinion.

The Commissioner does not explain how Plaintiff's imaging conflicts with Dr. Narwani's opinion regarding Plaintiff's mobility, flexibility, and ability to lift or carry. Nor did the ALJ explain why the imaging results were inconsistent with Plaintiff's testimony. Further, the ALJ cited no professional medical opinions supporting her conclusion, which suggests that she "impermissibly relied on her own, lay medical opinion" to reject Plaintiff's testimony and the opinion of Plaintiff's treating physician. *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1060 (N.D. Cal. 2014); *see also Trevizo*, 871 F.3d at 683 ("The ALJ . . . reject[ed] the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor."); *Leusch v. Berryhill*, 358 F. Supp. 3d 896, 906 (D. Ariz. 2019) ("ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence."). An ALJ is not a physician but an administrative adjudicator. As such, an ALJ lacks both the authority and expertise to substitute her judgment for that of a physician. The ALJ erred by doing so here. Accordingly, for these reasons, the Court concludes that the ALJ erred in giving Dr. Narwani's opinion only "minimal weight."

### B. Symptom Testimony

Plaintiff also contends that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 15–21.) An ALJ performs a two-step evaluation of a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ determines whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If the claimant has done so, the ALJ then evaluates the claimant's testimony in the context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3). To prevent the ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony, *see Pennock*, 2020 WL 6796768, at *6 (quoting *Thomas*, 278 F.3d at 958), the Ninth Circuit has held that the

ALJ may only discredit a claimant's allegations for reasons that are "specific, clear and convincing." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). This is an exacting standard, under which the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Applying the forgoing standards to the instant case, the Court concludes that the ALJ erred in discrediting Plaintiff's symptom testimony. On the first step, the ALJ determined that objective medical evidence reflected the presence of degenerative disc disease, lumbar spondylosis, and post-traumatic stress disorder (R. at 17), that could reasonably be expected to cause the symptoms Plaintiff alleged. (R. at 20.) On the second step, however, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not consistent with the medical evidence and other evidence in the record." (R. at 20–21.)

The ALJ gave essentially four reasons for rejecting Plaintiff's symptom testimony: (1) Plaintiff was "not housebound," and was able to travel to the Philippines twice during the period of alleged disability (R. at 21); (2) Plaintiff received effective medical treatment for his neck and back pain (R. at 21–22); (3) Plaintiff's physical examinations showed normal strength, stability, and range of motion (R. at 22); and (4) Plaintiff's imaging showed only moderate findings inconsistent with disabling pain. (R. at 22.) These are the same reasons the Commissioner argued the Court should rely on as justifying the ALJ's decision to reject Dr. Narwani's medical opinion. (Def. Br. at 14–17.) For the reasons previously given, the ALJ's decision to reject Plaintiff's symptom testimony, like her decision to discredit Dr. Narwani's opinion, was error.

First, the ALJ cited no record evidence suggesting Plaintiff's daily activities, or his limited travel to the Philippines, were inconsistent with his symptom testimony. As noted above, the fact that Plaintiff traveled to the Philippines and could engage in limited daily activities despite his pain does not mean he could consistently perform meaningful work despite the pain. *See Vertigan*, 260 F.3d at 1050. Second, as discussed in substantial

detail above, Plaintiff's treatments were neither particularly effective nor "conservative and minimal." (R. at 21.) The record belies the ALJ's conclusion that Plaintiff's symptom testimony is inconsistent with his treatment history. Third, the record is filled with evidence that Plaintiff's range of motion and strength were substantially impaired. A single, isolated treatment note to the contrary does not constitute substantial evidence supporting the ALJ's decision to reject Plaintiff's symptom testimony. *See Attmore*, 827 F.3d at 877. Finally, in rejecting Plaintiff's symptom testimony based on Plaintiff's diagnostic imaging, the ALJ "impermissibly relied on her own, lay medical opinion." *Schultz*, 32 F. Supp. 3d at 1060. Accordingly, the supposed inconsistencies between Plaintiff's symptom testimony and the record do not satisfy the requirement that the ALJ provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony.

**C.     Remedy**

Having determined that the ALJ made errors sufficiently serious to warrant remand, the Court must decide whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an immediate award of benefits rather than remand the case for additional administrative proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014). Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear, as Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009), *and Garrison*, 759 F.3d at 1019–23, *with Treichler*, 775 F.3d at 1099–02.

The rule can be applied only when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to

remand or apply the rule is discretionary and courts "frequently exercise[ ] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

In this case, the Court will apply the ordinary remand rule, not the credit-as-true rule. Additional administrative proceedings would be useful in this case for two reasons. First, as Plaintiff notes, the non-examining state agency physicians found the record insufficient to determine whether Plaintiff was disabled. (Pl. Br. at 8.) A remand for further proceedings will therefore allow for additional, and useful, opinion evidence to be obtained. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary."). Second, the principal deficiency in the ALJ's decision was its failure to adequately articulate the ALJ's specific findings and the reasons for those findings. Further administrative proceedings would permit the agency to clarify those findings. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495–96 (9th Cir. 2015). The Court will therefore remand this matter for additional proceedings.

**IV. CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 25th day of March, 2022.

Michael T. Liburdi
United States District Judge